### Lewis v. Lewis, Appellant.

Argued March 5, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*H. D. Carey*, for appellant.

*George Morrow*, for appellee.

Opinion by Trexler, J., April 10, 1929:

This is an action of divorce. The libellant alleges that the desertion occurred on October 13, 1925. On October 12th, the husband was about to take an automobile ride with his father and the respondent insisted upon going along, although the relations between the husband's father and her were not pleasant. As she came down from the second story of the house, she claims he tore her dress. His version is that he took hold of her arm and she jerked away and tore it, that she then slapped him on his face and said, "If you go up there, I will never live with you." His mother and father testified that they heard her say that she would not live with him if he went with his folks. She then went to a justice of the peace and had a warrant sworn out against her husband for disorderly conduct. The next day the matter was taken up before the justice of the peace; the libellant alleges he did not know what the charge against him was and he asked his wife if she would not come back to him and she said, "No, I won't come back, I know what I am doing," and that the squire said, "You have got to settle this some way. If you don't settle, you will have to go to court."

The agreement which he signed was acknowledged by him and contained the declaration that there was "a verbal understanding between the acknowledger and his wife, Elsie Lewis, that they shall separate and live apart;" that the wife shall have the household furnishings; that he will not molest or hinder her in any way and that he will pay half of his income to her. The wife states that they both agreed to this; that she signed a similar paper and gave it to him and he gave her the paper which was produced before the court below. Later on, in his testimony, he stated that he signed this paper in order to escape going to jail, that the justice of the peace told him to sign this or get bail or go to jail and that he

signed it without reading it. The alderman told him that the paper was for the furniture and $40 a month. He claims that he signed the paper by duress and the court sustained him in this position.

It is to be regretted that the justice of the peace was not called as a witness. The libellant's testimony, contradicted as it is by the respondent, is not sufficient to overcome the written document which he acknowledged. If he signed the paper under duress, he did not repudiate it when he had the chance. He ceased to live with his wife, and paid her the amount which he agreed to pay and allowed her to have the furniture and thus complied with the provisions of the contract he made. Further, his story is very improbable. It appears that he is an intelligent man, can read and write, and his testimony before the court does not indicate that he could be coerced to sign any paper of this character and that before signing it, he would at least acquaint himself with its contents.

One thing is certain that there was no desertion occurring on October 13th, the date laid in the libel, but that the parties separated by mutual consent. After the occurrence he states, "I went down to the house nights and stayed for a time and the next thing that happened, the furniture was all taken out." Her narrative is to the effect that she returned to their home and stayed there three nights and that "he did not show up at all." In this, she is corroborated by her mother. After the expiration of a week, she took some of the furniture out of the house and left some which he wanted. Both parties looked upon the separation as completed and he was making no effort to resume relations with his wife, or to get rid of the agreement which he claims he was forced to sign.

In November, she states that her husband asked her to come back and she told him she would. The arrangements were all made that on the first of April

they were to go to live at Chinchilla. He admits that they had talked about going back to live together, but that she did not agree to it "thoroughly." "She did and then she pulled it back again." "Q. She did tell you she would go back to live with you?" "A. Once I believe she did." Her mother gives a circumstantial account of a conversation she had with the libellant in which he recognized the fact that they did have an agreement to again live together and that they were to have a home in Chinchilla and it is admitted by both parties that they were out looking for a house, but he states that she could not be suited. This she denies, and states that she was willing to live anywhere, provided "it was a home of our own."

On January 28, 1926, the wife was taken to the hospital and was operated on for appendicitis. During her stay there the husband was assiduous in his attention to her and visited her almost every day. She was discharged on February 28, 1926, and for several weeks after that he went to see her daily.

The week before the first of April, when they were to set up housekeeping again, she states, and in this she is corroborated, that she asked him for $10 to get a new pair of slippers and he said she was always wanting money and that his love for her was about dead and he was going to get a divorce and "if she didn't give him a divorce he would drive her name through the mud, he would make her." After that he did not come to see her. He failed to give her money for the support of their sub-normal child and she was compelled to have him arrested the second time.

At the hearing of the second trial, she stated that it "was impossible for her to live with him." She was asked to explain the circumstances which led to this remark, but was not permitted. The statement without the reason back of it does not amount to much and the statement itself is not pertinent to the pres-

ent contention as it occurred long after the alleged desertion and would only have been evidence of persistance in the desertion if there had been one.

We are all of the opinion that there is no proof of the desertion occurring on October 13th. The libellant was required to prove the desertion in accordance with the statement contained in the libel: Flanigan v. Flanigan, 84 Pa. Superior Ct. 448. We are further of the opinion that the paper which the libellant signed and which was a statement of mutual separation was not obtained by duress. We are convinced that there was subsequent reconciliation and an agreement to live together and that this was defeated by his withdrawal from the arrangement. He was required to prove his case. He has failed to establish to our satisfaction a wilful and malicious desertion by the respondent, the proof in this respect is that the separation was by mutual consent. The arrangement entered into by the parties to resume conjugal relations were frustrated by his withdrawal from them. A divorce will not be granted unless the ground alleged in the libel is clearly established: Stewart v. Stewart, 88 Pa. Superior Ct. 1, 3.

The decree of the lower court is reversed and the record is remitted with instructions to dismiss the libel, the costs of this appeal to be paid by the libellant.